# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**WCR, Incorporated,**

      *Plaintiff,*

**v.**                                                           **Case No. 3:18-cv-278**
                                                                **Judge Thomas M. Rose**

**Western Canada Plate**
**Exchanger, Ltd.,**

      *Defendant.*

---

**ENTRY AND ORDER DENYING DEFENDANT WESTERN CANADA PLATE EXCHANGER, LTD.'S MOTION TO DISMISS. (DOC. 14) THE PARTIES ARE ORDERED TO SUBMIT A RULE 26(F) REPORT.**

---

Before the Court is a Motion to Dismiss filed by Defendant Western Canada Plate Exchanger, Ltd. (Doc. 14). Defendant asserts that Plaintiff WCR Incorporated's Complaint (Doc. 10) should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Doc. 14, PageID 85). Additionally, Defendant contends that venue is improper pursuant to Federal Rule of Civil Procedure 12(b)(3). (*Id.* at PageID 85, 98). Finally, the Defendant claims that the Complaint should be dismissed under the doctrine of forum non conveniens since alternate forums are available and both private and public interest factors favor such a dismissal. Because the parties agreed to a forum selection clause stipulating that they would forgo their private interests as to where any dispute would be heard, and because no public interests overcome that agreement, the motion will be denied.

**I. Background**

Plaintiff WCR, Incorporated, hereinafter referred to as "WCR," designs and manufactures plate heat exchangers, which are used in a wide variety of industries to heat and cool liquids. (Doc. 10, PageID 58). Though the company maintains several branch offices throughout the United States and distributes their product worldwide, their headquarters and principal place of business are located in Fairborn, Ohio. (*Id.* at PageID 57-58). WCR allegedly employs approximately 130 Ohioans. (Doc. 15, PageID 109). Defendant, Western Canada Plate Exchanger, Ltd., hereinafter referred to as "Western Canada," is a Canadian company whose principal place of business is located in Alberta, Canada. (Doc. 10, PageID 57). According to the Complaint, WCR enters into service and distribution agreements with local distributors in other regions of the world to sell WCR's goods and services in that region. (*Id.* at PageID 58). In those instances, WCR does not enter the territory itself, instead relying upon the local distributor to provide their goods and services. *Id.*

On July 1, 2010, WCR and Western Canada entered into such a service and distribution agreement, which was renewed on a regular basis up through the agreement at issue in this case, hereinafter referred to as "the Agreement," which began on January 1, 2017 and ran through December 31, 2018. *Id.* WCR allegedly initiated the negotiation of the original service and distribution agreement in 2010 with Western Canada, and all the negotiations allegedly took place while the representatives of Western Canada were in Canada. (Doc. 14, PageID 91-92). Pursuant to the Agreement, Western Canada purchased products that were allegedly designed and manufactured at the WCR facility in Washington Court House, Ohio and were then shipped from that same location to Western Canada. (Doc. 10, PageID 59). Invoices sent to Western

Canada detailing the orders and shipment information were printed on WCR letterhead and required payment to the Ohio address. *Id.* Western Canada employees allegedly communicated with WCR employees located in Ohio regarding the Agreement and traveled "on one or more occasions" to WCR's headquarters in Ohio to promote sales of WCR products and undergo training. *Id.*

The Agreement governs the business relationship between WCR and Western Canada and includes a choice of law provision. Section 19 of the Agreement states that it will be "enforced in accordance with, the laws of the State of Ohio." (*Id.* at PageID 58). Section 9F of the Agreement imposes WCR's "Terms and Conditions," which are allegedly attached to every invoice. (Doc. 15, PageID 111-12). The Terms and Conditions to which Western Canada are bound include an express forum selection clause submitting Western Canada to jurisdiction in Ohio. (*Id.* at 112).

WCR claims Western Canada breached Articles 9D and 12 of the Agreement, which state that Western Canada will only "sell, use, and install" WCR products or products approved by WCR and that Western Canada and its shareholders will not be involved in any business which provides goods or services similar to those provided by WCR without their written consent. (Doc. 10, PageID 59-60). Western Canada's Director and sole Voting Shareholder was allegedly the director of Salarix, a Canadian company that provides goods and services similar to those provided by WCR, at the same time he was serving in his positions with Western Canada. (*Id.* at PageID 60-61). WCR argues that since an agent of Western Canada was associated with a business similar to WCR without their consent, Western Canada breached the Agreement. (*Id.* at

3

PageID 61). For each of those breach of contract claims, WCR alleges damages in excess of $75,000 plus interest in lost profits. (*Id.* at PageID 62-63).

WCR's Complaint also alleges that Western Canada breached Section 9F of the Agreement and Section 5 of the Terms and Conditions by failing to pay for a custom order that they cancelled. (*Id.* at PageID 63). Section 5 of the Terms and Conditions states that "custom manufactured goods must be paid for in full even if the order is cancelled." *Id.* WCR claims they are entitled to compensatory damages from this alleged breach of the Agreement. (*Id.* at PageID 64).

On August 17, 2018, WCR filed their original complaint against Western Canada. (Doc. 1). On October 11, 2018, Western Canada filed a motion to dismiss for lack of personal jurisdiction, improper venue, and/or forum non conveniens. (Doc. 9). In response, WCR filed their amended complaint on October 24, 2018, herein referred to as "the Complaint." (Doc. 10). On November 7, 2018, Western Canada filed the motion to dismiss for lack of jurisdiction, improper venue, and/or forum non conveniens which is currently before the Court. (Doc. 14). WCR filed a response in opposition to Western Canada's motion to dismiss on November 28, 2018. Finally, Western Canada filed a reply brief in support of their motion to dismiss on December 12, 2018. Currently, the motion to dismiss is ripe for decision.

**II. Jurisdiction**

WCR asserts in the Complaint that the Court has diversity jurisdiction over the case pursuant to 28 U.S.C. §1332 because WCR is a citizen of the state of Ohio and Western Canada is a citizen of a foreign state, specifically Canada, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4

**III. Standard of Review**

Western Canada seeks dismissal of WCR's claims under Federal Rule of Civil Procedure 12(b)(2), which challenges the court's personal jurisdiction of a case. In order to survive a motion to dismiss for lack of personal jurisdiction purely on the motions, a plaintiff must make a prima *facie case* that the court has personal jurisdiction. *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)). In motions to dismiss decided purely upon the pleadings, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff and cannot take into consideration the controverting assertions of the party seeking dismissal. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). However, courts may consider the defendant's undisputed assertions. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 153 (6th Cir. 1997). When the court holds an evidentiary hearing, the plaintiff must establish by a preponderance of the evidence specific facts that the court has personal jurisdiction over the non-resident defendant. *Kroger* at 510. As the Court held no evidentiary hearing in this case, WCR need only make a *prima facie* case that the Court has personal jurisdiction over Western Canada.

Although Plaintiff's *prima facie* burden is relatively slight, the Court must still find that "'[P]laintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss.'" *Palnik v. Westlake Entm't, Inc.*, 344 Fed. Appx. 249, 251 (6th Cir. 2009) (quoting *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)). Thus, "it remains the plaintiff's burden and the complaint must have 'established with reasonable particularity' those specific facts that support jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Consequently, the rules are designed in part

to protect potential defendants from a "plaintiff's bald allegation of jurisdictional facts." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

**IV. Analysis**

    **A. Personal Jurisdiction and Venue**

A *prima facie* showing of personal jurisdiction in diversity cases requires the application of the law of the forum state. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). The Court will thus apply the law of the state of Ohio.

"[T]he requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system." *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc.*, 610 N.E.2d 987, 988 (Ohio 1993). The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court. See generally *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).

A forum selection clause contained in an agreement in connection with an arm's length commercial transaction between two business entities is valid and enforceable. *Kennecorp*, 610 N.E.2d at 988 (upholding the validity of a forum selection clause in a contract between a California company and an Ohio-based company which designated Ohio as the forum and Ohio law as the choice of law). The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside. *M/S Bremen*, 407 U.S. at 15; see also *General Electric Co.*, 29 F.3d at 1099 (rejecting plaintiff's attempts to avoid litigating in Germany, the forum identified in the forum selection clause, as opposed to Ohio, on the grounds that plaintiff, a sophisticated

business, had agreed to the deal and because Germany was where the deal was signed and negotiated, the goods were manufactured, much of the contract was performed and presumably where witnesses would be located); *Kennecorp*, 610 N.E.2d at 989.

In determining the validity of a particular forum selection clause, we thus consider the following factors: (1) the commercial nature of the contract; (2) the absence of fraud or over-reaching; and (3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust. *Info. Leasing Co. v. Jaskot*, 784 N.E.2d 1192, 1195-96 (Ohio Ct. App. 2003); see also *M/S Bremen*, 407 U.S. at 15; and *Kennecorp*, 610 N.E.2d at 989; *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006).

The parties' contract is commercial in nature. WCR was looking for distributors in Canada and approached Western Canada with the opportunity to form a business relationship. (Doc. 14-1, PageID 104). WCR sent invoices to Western Canada requiring payment to Ohio, for products ordered by Western Canada and designed and manufactured in Ohio. There is no contention of fraud or over-reaching and the forum selection clause of the contract is by no means unjust.

**Forum Non Conveniens**

When the parties' contract contains a valid forum-selection clause, it "represents the parties' agreement as to the most proper forum." *Stewart,* 487 U.S., at 31. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.,* at 33 (Kennedy, J., concurring). For that reason, and because the over-arching consideration in evaluating a forum non conveniens claim is whether a transfer would promote "the interest of justice," "a valid forum selection clause

[should be] given controlling weight in all but the most exceptional cases." Id.,at 33 (same); see also *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013). The party seeking to avoid application of the forum selection clause bears the burden of showing why the case should not be tried in the forum to which the parties agreed. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64 (2013).

A court evaluating a motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64, 134 S. Ct. 568, 582, 187 L. Ed. 2d 487 (2013).

Movants' public interest argument is limited:

> public interest factors weigh in favor of dismissal because this case involves a Canadian company accused of breaching a contract for how it conducted business in Canada. There is significant interest in a Canadian court resolving controversies where the alleged activity took place in Canada. Additionally, there is substantial unfairness in burdening U.S. citizens with jury duties when the transactions and occurrences at issue in this case occurred in Canada.

Doc. 14, PageID 100-01. To the extent these are legitimate public interest concerns, they do not overcome the weight of the parties' having agreed to this forum.

**V. Conclusion**

Because the parties agreed to forum selection clause and because there is no overriding public interest, Defendant Western Canada Plate Exchanger, Ltd.'s Motion to Dismiss (Doc. 14) is **DENIED**. The Parties are **ORDERED** to submit a Rule 26(f) report.

                                                s/Thomas M. Rose
                                         _____
                                                THOMAS M. ROSE
                                      UNITED STATES DISTRICT JUDGE