UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| WCR, INCORPORATED, | : Case No. 3:18-cv-00278 |
| Plaintiff, | : |
| | : District Judge Thomas M. Rose |
| vs. | : Magistrate Judge Sharon L. Ovington |
| WESTERN CANADA PLATE EXCHANGER, LTD., | : |
| Defendant. | : |

# REPORT AND RECOMMENDATIONS[1]

In this case, Plaintiff WCR, Inc. seeks to impose liability on Defendant Western Canada Plate Exchanger Ltd. (Western Canada Plate) for breach of contract. In a second and more expansive case, Plaintiff WCR, Inc. seeks to impose liability on a similarly named Defendant—Western Canada Heat Exchanger, Ltd. (Western Canada Heat)—and its owner Earl Strohschein for fraud, breach of contract, reformation, and unjust enrichment. *WCR, Incorporated v. Western Canada Heat Exchanger, Ltd., et al.*, 3:20cv00143 (S.D. Ohio). The instant case is before the Court upon Plaintiff WCR's Motion to Consolidate (Doc. No. 38), Defendant's Memorandum in Opposition (Doc. No. 41), WCR's Reply (Doc. No. 44), and the record as a whole.

WCR argues that consolidation of the two cases—*WCR I* and *WCR II* (for ease of reference)—is warranted under Fed. R. Civ. P. 42(a) because the cases involve

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

substantially the same parties and common questions of law and fact. WCR maintains that the common questions concern the same alleged fraudulent scheme perpetrated by Western Canada Plate and Western Canada Heat at the direction of Earl Strohschein—who is the owner of each entity. WCR also alleges that Strohschein improperly formed, intermingled, and operated Western Canada Heat as the alter ego of Western Canada Plate.

Western Canada Plate contends that consolidation of *WCR I* and *WCR II* is unwarranted because (1) the cases involve different parties, different claims, and different evidence; (2) the cases were filed years apart from each other; (3) WCR improperly seeks consolidation, in part, to compensate for its own procedural missteps; and (4) each case has its own technical issues including discovery disputes in the instant case and threshold jurisdictional issues now pending in *WCR II*.

Rule 42(a) controls consolidation through its requirement of "a common question of law or fact …." The goal "is to administer the court's business 'with expedition and economy while providing justice to the parties.'" *Advey v. Celotex Corp.*, 962 F.2d 1177, 1180 (6th Cir. 1992) (citation omitted); *see Guild Associates, Inc. v. Bio-Energy (Washington), LLC*, 309 F.R.D. 436, 439 (S.D. Ohio 2015) (Marbley, J). To secure justice to the parties, "'[c]are must be taken that consolidation does not result in unavoidable prejudice or unfair advantage.'" *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993) (citation omitted). If consolidation would leave minimal savings of judicial resources, "the risk of prejudice to a party must be viewed with even greater scrutiny." *Id.* And when common questions of law or fact exist, the decision to

consolidate considers:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (citation omitted); *see Dreher v. Eskco, Inc.*, 3:08–cv–325, 2009 WL 2176060, at *3 (S.D. Ohio 2009) (Rose, J).

*WCR I* and *WCR II* share common questions of law and fact concerning whether Western Canada Plate violated the exclusivity terms in a 2017 Service Center Agreement. WCR's complaint in *WCR I* alleges that Western Canada Plate breached the Agreement (1) by not paying for goods it ordered from WCR; (2) by not selling, using, and installing only WCR products (or other Plate Products approved by WCR); and (3) by not engaging in the sale of products similar to WCR's products or providing services similar to those WCR provides." (*WCR I*, Doc. No. 1, ¶ 17).  These same allegations arise in, and are integral to, *WCR II* where the Complaint alleges:

> WCR was damaged as a result of Strohschein's control over WCPE [Western Canada Plate Exchanger] and WCHE [Western Canada Heat Exchanger] and his deceptive and fraudulent use of them to deprive WCR of sales and the ability to have another, honest, distributor in the territory such that maintaining the corporate formalities would work an injustice upon WCR.

(*WCR II*, Doc. No. 1, ¶ 69).

Further commonality emerges from Strohschein's control over Western Canada Plate and Western Canada Heat.  In *WCR I*, Plaintiff says that Strohschein owns Western Canada Plate and is its sole voting shareholder and director.  (*WCR I*, Doc. No. 1, ¶ 3).  In

3

*WCR II*, Plaintiff alleges that "Strohschein identifies himself as the Owner of [Western Canada Heat], runs its day-today operations, and has sent and directed numerous communications on its behalf to WCR in Ohio. Strohschein is also the 'President' of the nearly identically named [Western Canada Plate]." (*WCR II*, Doc. No. 1, ¶ 8). WCR alleges in *WCR II*, "Strohschein caused [Western Canada Plate] to enter into the Service Center Agreements with WCR in Ohio, but then ordered goods using the [Western-Canada-Heat] name, which Strohschein then caused [Western Canada Heat] and [Western Canada Plate] to not pay for." *Id*. at ¶ 29. More colloquially, by pulling the strings of both entities, Strohschein allegedly masterminded the situation that leads to WCR's breach-of-contract claim in *WCR I* and its fraud claims against both entities in *WCR II* as well as its contract-reformation claim (which aims to add Western Canada Heat to the 2017 Security Center Agreement) and its unjust-enrichment claim in *WCR II*. WCR's counsel, moreover, cogently asserts, "the companies have substantially similar names, the same employees and physical address and offices, the same purpose and function, and both are operated by Strohschein interchangeably, with no attempt to follow corporate formalities, such that they are effectively the same entity." (*WRC I*, Doc. No. 38, PageID 348).

Additional common questions of law and fact concern WCR's allegations that the 2017 Service Center Agreement required Western Canada Plate and Western Canada Heat to purchase goods exclusively from WCR, and prohibited both entities (or their shareholders) from owning an interest in any competing venture. Thus, both cases explore whether or to what extent Strohschein wrongly caused Western Canada Plate or

4

Western Canada Heat to purchase goods in contravention of the 2017 Service Center Agreement, and whether Strohschein caused Western Canada Plate or Western Canada Heat to fail to pay WCR for custom-manufactured goods ordered from WCR.

It is reasonable to wonder, in light of the above commonalities, why WCR only sued Western Canada Plate in *WCR I*.  The *WCR II* Complaint explains this.  WCR reports that Western Canada Plate "was the only named defendant in … [*WCR I*] because that was the entity identified in the Service Center Agreements and because Western Canada Plate had used the name 'Western Canada Heat Exchanger' interchangeably with 'Western Canada Plate Exchanger,' and further because WCR had yet to fully discover the fraud committed by Earl Strohschein personally and through [Western Canada Heat]."  (*WCR II*, Doc. No. 1, ¶ 53).  "After WCR commenced the Litigation against [Western Canada Plate], [Western Canada Heat] refused to produce documents that would identify the purchases made by [Western Canada Heat] in order to circumvent the Current Service Center Agreement, *now claiming the two companies were separate*."  *Id*. at ¶ 54 (emphasis added).  Of course, to date, these allegations have not proved true or false.  Still, they serve for now to illuminate commonality.

Western Canada Plate contends that consolidation risks conflating claims and causing prejudice.  It accurately describes WCR claim in *WCR I* as a single straightforward breach-of-contract claim.  But there is nothing inordinately difficult about keeping this single straightforward claim separate from the claims in *WCR II*.  Judicial experience teaches that breach-of-contract claims and fraud claims often arise in a single case without conflation or confusion.  The risk of conflation or confusion is low even

5

when such cases involve multiple defendants facing different claims. In the present case, consolidation will help clarify, rather than conflate or confuse, to whom liability (if any) attaches. *Cf. Rodriguez v. Passinault*, 637 F.3d 675, 689 n.6 (6th Cir. 2011) ("'Consolidation ... does not merge the suits into a single cause, or change the rights of the parties or make those who are parties in one suit parties in another.'" (quoting *Kraft, Inc. v. Local Union 327, Teamsters,* 683 F.2d 131, 133 (6th Cir. 1982))). And, if any significant confusion or prejudice emerges from consolidation, the Court retains discretion to order separate trials on the claim in *WCR I* and the claims in *WCR II*. *See* Fed. R. P. 42(b).

Western Canada Plate contends that consolidation is unwarranted because these two cases involve different parties, different claims, and different evidence. These points do not assist Western Canada Plate. The differences between Western Canada Plate and Western Canada Heat might well turn out to be minimal or nonexistent, in light of WCR's alter-ego theory and allegations that Strohschein allegedly (1) owns the former and is the owner or president of the latter, and (2) acted at different times on behalf of one or the other in connection with the 2017 Security Center Agreement. While the single claim in *WCR I* advances a theory different from the fraud theories in *WCR II*, the claims and evidence in both cases involve Strohschein's alleged activities—activities that gave rise to the claims in both cases (in WCR's view). Additionally, the reformation claim in *WCR II* concerns the contract at issue in *WCR I*—the 2017 Security Center Agreement. If that Agreement is reformed as WCR wants, Western Canada Heat might incur liability for breach of contract either alone or together with Western Canada Plate.

As a result, the reformation claim in *WCR II* is tied to, rather than different from, the breach-of-contract claim in *WCR I*. For these reasons, the purportedly different parties, claims, and evidence do not suffice to avoid consolidation.

Western Canada Plate's reliance on the years between the filing of *WCR I* and *II* along with WCR's "own procedural missteps" are unavailing. Just short of nineteen months lapsed between the time WCR filed its two cases. No prejudice arises from this time lapse. Additionally, Strohschein's alleged misconduct and WCR's discovery of it, *see* supra, p. 5, accounts for the delay in filing *WCR II*. And WCR did not commit a procedural misstep by filing two cases rather than seeking to amend its Complaint in *WCR I*. Western Canada Plate offers no authority to conclude otherwise. (*WCR I*, Doc. No. 41, PageID 451-52).

Lastly, Western Canada Plate contends that consolidation should not occur because each case has its own technical issues including discovery disputes in the instant case and threshold jurisdictional issues now pending in *WCR II*. Yet, consolidation will not merge or confuse these issues and will not prejudice Western Canada Plate or Western Canada Heat. *Cf. Rodriguez*, 637 F.3d at 689 n.6. Consolidation will instead set the cases on the same procedural path by way of a new scheduling order that will advance the interests of conserving judicial resources while providing justice to the parties.

Accordingly, WCR's Motion to Consolidate is well taken.

## IT IS THEREFORE RECOMMENDED THAT:

1.  WCR's Motion to Consolidate (Doc. No. 38) be granted; and

2.  The instant case be consolidated with *WCR, Inc. v. Western Canada Heat Exchanger, Ltd., et al.*, 3:20cv00143.

October 20, 2020                                *s/Sharon L. Ovington*
                                                                              Sharon L. Ovington
                                                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).