UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| WCR, INCORPORATED,<br><br>    Plaintiff,<br><br>vs.<br><br>WESTERN CANADA HEAT<br>EXCHANGER, LTD., *et al.*,<br><br>    Defendants. | Case No. 3:18-cv-278<br>Consolidated with 3:20-cv-143<br><br><br><br>District Judge Michael J. Newman<br>Magistrate Judge Sharon L. Ovington |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (DOC. NO. 15)**

This civil case is before the Court on Defendant Earl Strohschein's Fed. R. Civ. P. 12(b)(2) motion to dismiss premised on a lack of personal jurisdiction. Doc. No. 15. Plaintiff WCR, Incorporated ("WCR") filed a memorandum in opposition. Doc. No. 21. Thereafter, Defendant filed a reply. Doc. No. 24. The Court held an evidentiary hearing regarding the jurisdictional issues in this case on March 3-4, 2021. Doc. Nos. 35, 36. The parties both submitted post-hearing briefing. Doc. Nos. 41, 42.

**I.**

WCR brings this fraud and breach of contract action to recover damages from Western Canada Heat Exchanger (Canada Heat), Western Canada Plate Exchanger (Canada Plate), and Strohschein, an owner of both companies. Doc. No. 1; Doc. No. 39 at PageID 458, 483, 566-67. WCR claims that Defendants circumvented an exclusivity provision included in their contract. Doc. No. 1. Both Canada Heat and Canada Plate are Canadian companies, and Strohschein is a Canadian citizen. Doc. No. 42 at PageID 654; Doc. No. 39 at PageID 514, 598.

WCR began a contractual relationship with Strohschein and his companies in 2010, when they executed a sales agreement (the parties refer to this as a "service center agreement"). Doc. No. 38 at PageID 279. The agreement provided that Strohschein's companies would regularly purchase products from WCR. Doc. No. 39 at PageID 464-65; Strohschein Exhibits S, T. The companies continued to contract with one another, most recently signing a third service center agreement in 2017. Doc. No. 38 at PageID 258; WCR Exhibit 004. The parties' relationship began to deteriorate when WCR suspected that Strohschein's companies had violated the exclusivity agreement included in their contract. Doc. No. 38 at PageID 289-90. WCR subsequently terminated its relationship with Strohschein's companies due to their alleged breach of the exclusivity agreement. Doc. No. 38 at PageID 273.

WCR filed suit against Canada Plate in 2018 (3:18-cv-278). Doc. No. 1. In 2020, WCR filed suit against Canada Heat and Earl Strohschein in his personal capacity (3:20-cv-243). *Id.* This Court previously found that the exercise of personal jurisdiction over Canada Plate was proper, and Canada Heat conceded that jurisdiction over that entity is proper as well. Doc. No. 18; Doc. No. 30. Strohschein now moves to dismiss the case against him in his personal capacity for supposed lack of personal jurisdiction. Doc. No. 42.

## II.

District courts choose between three alternative paths to resolve Rule 12(b)(2) motions: (1) "decide the motion upon the affidavits alone"; (2) "permit discovery in aid of deciding the motion"; or (3) "conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 1212, 1214 (6th Cir. 1989)). Whichever path the Court selects, plaintiff bears the burden of establishing that person jurisdiction over defendant exists. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

In this case, an evidentiary hearing was necessary to clarify the facts pertaining to jurisdiction. Doc. No. 33. Because the Court held such a hearing, Plaintiff must establish that personal jurisdiction exists by a preponderance of the evidence. *See Serras*, 875 F.2d at 1214.

A court sitting in diversity jurisdiction must respect the contours of the forum state's long-arm statute. *See, e.g.*, *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). The Sixth Circuit has long recognized that Ohio's long-arm statute is "not coterminous" with the federal Due Process Clause. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012) (quoting *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008) ("We have recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits")). The applicable two-part test asks "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).

WCR argues that the Court has specific jurisdiction over Strohschein under both the Ohio long-arm statute and the federal Due Process Clause. *See generally* Doc. No. 41. Both standards require that plaintiff's cause of action "arise from" defendant's conduct in the forum state. *See, e.g.*, *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014); *Brunner*, 441 F.3d at 463.

### III.

**A. Ohio's Long-Arm Statute**

Ohio's long-arm statute provides that a court can exercise specific personal jurisdiction over a defendant if the claim "ar[ose] from" any one of nine enumerated actions. Ohio Rev. Code § 2307.382(A). WCR argues that Strohschein is subject to personal jurisdiction under Ohio's long-arm statute because its claims arise from Strohschein (1) transacting business in Ohio and (2) causing tortious injury in Ohio. Ohio Rev. Code. §§ 2307.382(A)(1), (A)(6).

3

Ohio's long-arm statute allows a court to assert jurisdiction over a person transacting business in Ohio. Ohio Rev. Code § 2307.382(A)(1). "The Ohio Supreme Court interprets the transacting-business clause as meaning 'to carry on business' and 'to have dealings,' and as being broader than the word 'contract.'" *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 n.5 (6th Cir. 2006) (quoting *Special Aviation Sys., Inc. v. Aircraft Structures Int'l Corp.,* 323 F.Supp.2d 839, 843 (N.D. Ohio 2004); *see Goldstein,* 638 N.E.2d at 544-45.

In this case, Plaintiff points to documentation revealing that Strohschein engaged in continuous email exchanges with WCR, an Ohio company. Doc. No. 38 at PageID 262-66. Greg Pinasco, Vice President Direct of Western Operations at WCR, testified that Western Canada placed thousands of orders with WCR between 2012 and 2016. Doc. No. 38 at PageID 379. Pinasco also testified that Strohschein was personally involved in approximately 50% of those orders. *Id.* at 380. Every one of those orders would be routed through Ohio in one form or another, through e-mail, an invoice, or even direct communication with individuals in Ohio. *Id*. at 381. Steven Schwab, a WCR application engineer (along with other application engineers), had regular contact with Strohschein via phone and email. *Id*. Strohschein also visited WCR's facility in Ohio for an open-house event in 2013. *Id*. at 474. Considered together, this evidence shows that Strohschein reached into Ohio to have dealings with, and engage in business, with WCR. *See Patel*, 445 F.3d at 904 n.5; *see also Goldstein*, 70 Ohio St.3d at 236.

In addition, WCR's CEO, Kim Andreasen, testified about the history of service center agreements between WCR and Canada Plate, which required Canada Plate to purchase all of the plate heat exchangers they required exclusively from WCR. Doc. No. 38 at PageID 252-55; WCR Exhibit 004, 0028. Strohschein originally signed the first service center agreement with WCR in 2010 and, over the years, signed additional similar agreements, including one as recently as 2017.

Doc. No. 38 at PageID 252-53. While Strohschein argues that there were gaps in time between effective service center agreements, these gaps do not negate the evidence establishing that Strohchein -- through the service center agreements -- reached into Ohio to have dealings with, and engage in business with, WCR.

For these reasons, WCR has shown by a preponderance of the evidence that Strohschein "transacted business in Ohio" under Ohio Rev. Code. § 2307.382(A)(1). *See Commodigy OG Vegas Holdings, LLC v. ADM Labs*, 417 F. Supp.3d 912, 917-924 (N.D. Ohio 2019) (finding jurisdiction was proper where partners of a Colorado corporation sent emails to the plaintiff in Ohio, received money from an Ohio plaintiff, received materials from plaintiff's warehouse in Ohio, and communicated with the plaintiff via an Ohio phone number). Given this conclusion, there is no need to reach WCR's additional argument that Strohschein caused tortious injury in Ohio under Ohio Rev. Code § 2307.382(A)(6). *Id.* at 920.

### B. Federal Due Process

To subject an out-of-state defendant to the specific personal jurisdiction of a state, due process requires that the defendant "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In practical terms, this means (1) defendant must purposefully avail him or herself of the privilege of acting in the forum state; (2) the claims must arise from defendant's activities in the forum state; and (3) the consequences of defendant's actions must have a substantial enough connection with the forum state such that the exercise of personal jurisdiction is reasonable. *Means v. United States Conf. of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

The evidence before the Court demonstrates that Strohschein purposefully availed himself of the privilege of acting in Ohio by creating substantial contacts with WCR such that he should have reasonably anticipated being hauled into an Ohio court. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016). Strohschein, for example, signed several service contracts with the Ohio corporation WCR, which included an exclusivity provision. Doc. No. 38 at PageID 253-56. By doing so, he should have reasonably anticipated that if there were any allegation that he breached those contracts, he would likely be hauled into court in Ohio. *See Southern Machine Co*, 401 F.2d at 382-83. Additionally, Strohschein created "continuing obligations" between himself and WCR in Ohio by signing multiple service center agreements over a period of seven years. Doc. No. 39 at PageID 462-67. While there were periods of time during those seven years where the parties were not under an agreement, testimony during the evidentiary hearing showed that during those periods they continued to operate as if a service center agreement were still in place. Doc. No 38 at PageID 280, 286, 402-03, 443.

Although Strohschein argues he only visited Ohio once, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another state, [courts] have consistently rejected the notion that an absence of physical contact can defeat personal jurisdiction there." *Rothschild Berry Farm v. Serendipity Group, LLC*, 84 F.Supp.2d 904, 908 (S.D. Ohio 1999) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)); *see also Rice v. Karsch*, 154 Fed. App'x. 454, 460 (6th Cir. 2005) (quoting *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) ("[M]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action").

It is additionally apparent that these claims arise from Defendant's forum activities. WCR brings claims for fraud, breach of contract, reformation, and unjust enrichment. *See generally* Doc. No. 1. To satisfy the "arising from" prong of the Sixth Circuit's *Southern Machine* test, plaintiff must demonstrate "a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun*, 758 F.3d at 506-07 (quoting *Burger King Corp.*, 471 U.S. at 474). This fraud and breach of contract action is based on alleged misrepresentations made during the seven-year business relationship between WCR and Strohschein's companies. Doc. No. 1. The communications regarding that contract, the orders they led to, and the disputes surrounding the exclusivity provision are the exact contacts that led to WCR bringing this case. Therefore, it is readily apparent that there is a "causal nexus" between Strohschein's contacts with Ohio and WCR's causes of action. *Commodigy OG Vegas Holdings*, 417 F. Supp.3d at 923.

Finally, once the "purposeful availment" and "arising from" elements are satisfied, there is a presumption that the reasonableness element is also present. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267-68 (6th Cir. 1996). To rebut the presumption, a defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Strohschein contends that allowing WCR to proceed with its claims against him in his personal capacity would be unreasonable because it is a substantial burden for Canadian citizens to litigate in Ohio. Doc. No. 42 at PageID 654. However, minimum contacts with the forum state in conjunction with the interests of a plaintiff and the forum "justify serious burdens placed on a non-resident defendant." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 165 (S.D. Ohio 2012). Further, Defendant's Canadian residency alone is not enough to rebut the presumption that exercising jurisdiction over him is reasonable, given his numerous, continuous contacts with an Ohio corporation. *See Dimensional Tech. Int'l, Inc. v. FA Kellner*

7

*Software*, No. 07-CV-14232, 2010 WL 726740, at *3 (E.D. Mich. Feb. 24, 2010) (finding the owner/president of a German corporation, living in Germany, subject to personal jurisdiction in Michigan); *Steelcase, Inc. v. Mar-Mol Co.*, 210 F. Supp. 2d 920, 936 (W.D. Mich. 2002) ("Because the Court has already concluded that all Defendants have substantial contacts with Michigan, the fact that Savin and Vensavin are international defendants is not an impediment to jurisdiction.")

As Strohschein has not rebutted the presumption that the exercise of jurisdiction over him in Ohio is reasonable, all three parts of the *Southern Machine* test have been met and personal jurisdiction over Strohschein comports with the Due Process Clause.

### C. Corporate Shield Doctrine

Strohschein last argues, as an overarching matter, that exercising personal jurisdiction over him is improper because all of his actions were taken in his corporate capacity for Western Canada Plate and Western Canada Heat, not in his individual capacity. Doc. No. 42 at PageID 644. He contends that because these actions were taken in his corporate capacity, the fiduciary shield doctrine protects him, and exercising jurisdiction would only be proper if WCR established facts sufficient to pierce the corporate veil. Doc. No. 42 at PageID 654.

The fiduciary shield doctrine holds that "'if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct.'" *Diebold, Inc. v. Firstcard Fin. Servs., Inc.*, 104 F. Supp. 2d 758, 761 (N.D. Ohio 2000) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir.1981)). However, the applicability of the fiduciary shield doctrine has been significantly limited, as "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000). "Where an out-of-state agent is actively and

8

personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice." *Balance Dynamics Corp.*, 204 F.3d at 698.

As previously discussed, Strohschein was significantly involved in the conduct giving rise to the claims at issue in this litigation. He signed each service center agreement; he communicated with WCR's agents consistently for a seven-year period; and he was personally contacted regarding the alleged violation of the exclusivity provision. *See* Doc. No. 38 at PageID 252-53, 262-66, 379-81, 523-25, 553-54. Although Strohschein's actions were taken in a corporate capacity, he was actively and personally involved in the conduct giving rise to the claims. Therefore, the corporate shield doctrine provides him no assistance in avoiding this Court's exercise of personal jurisdiction over him. *See Commodigy OG Vegas Holdings LLC*, 417 F. Supp. 3d at 924 (citing *Walker v. Concoby*, 79 F. Supp. 2d 827, 833 (N.D. Ohio 1999)); *see also Horter Invest. Mgt., LLC v. Cutter*, No. 1:15-CV-477, 2016 U.S. Dist. LEXIS 10150, at *10 (S.D. Ohio Jan. 28, 2016) (citing *Balance Dynamics* to state "even if, as [the defendant] contends, he committed the alleged tortious acts in his corporate capacity, his protection under the fiduciary shield doctrine is not absolute…. The fiduciary shield doctrine does not apply if the corporate officer was actively and personally involved in the conduct giving rise to the claim").

**IV.**

For the foregoing reasons, the Court **DENIES** Defendant Strohschein's motion to dismiss for lack of personal jurisdiction. He remains in the litigation, and discovery on the claims against him shall proceed forthwith.

**IT IS SO ORDERED.**

Date:  June 7, 2021                                    s/Michael J. Newman
                                                       Hon. Michael J. Newman

United States District Judge